# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                                   :
STEVEN MATHIS JR.,                 :
                                   :        Civil Action
                Plaintiff,         :        No. 08-cv-6129 (NLH)(KMW)
                                   :
        v.                         :        OPINION
                                   :
CAMDEN COUNTY; JANE DOE; ERIC      :
TAYLOR, WARDEN-CAMDEN COUNTY       :
CORR. FAC.; DR. AMED; DR.          :
POMERENTZE; OUR LADY OF            :
LOURDES HOSPITAL; HOLY SPIRIT      :
HOSPITAL; NURSE WILCOX; DR.        :
KULLIAT; DR. AMIT P. NAYAR         :
                                   :
                Defendants.        :
_____ :
```

**APPEARANCES**:

STEVEN MATHIS JR.
463 N. VERNON RD.
PHILADELPHIA, PA 19119
*Pro Se*

HOWARD LANE GOLDBERG
OFFICE OF CAMDEN COUNTY COUNSEL
520 MARKET STREET
COURTHOUSE – 14th FLOOR
CAMDEN, NJ 08102-1375
*Attorney for Defendants/Cross-claimants Camden County and Eric Taylor*

MICHAEL K. WILLISON
DICKIE, MCCAMEY & CHILCOTE
41 SOUTH HADDON AVE.
SUITE 5
HADDONFIELD, NJ 08033
*Attorney for Defendant Holy Spirit Hospital*

**HILLMAN, District Judge**

Plaintiff, Steven Mathis, Jr., brings this civil rights and negligence action against defendants Camden County, Eric Taylor, the warden of the Camden County Correctional Facility, Dr. Amed,

Dr. Pomerentze, Our Lady of Lourdes Hospital, Holy Spirit Hospital, Nurse Wilcox, Dr. Kulliat, and Dr. Amit P. Nayar.[1]  Plaintiff alleges that defendants acted with deliberate indifference towards his serious medical condition and needs and did not exercise reasonable care in treating him.

Before the Court are a pair of Motions to Dismiss filed by defendant Holy Spirit Hospital ("Holy Spirit").  In the first motion, Holy Spirit seeks to dismiss plaintiff's claims alleging that Holy Spirit acted negligently and with deliberate indifference when performing an operation on plaintiff.  In the second motion, Holy Spirit seeks to dismiss a cross-claim asserted by defendants/cross-claimants Camden County and Eric Taylor, demanding contribution and or indemnification from Holy Spirit and the other defendants.

For the reasons expressed below, Holy Spirit's Motion to Dismiss Plaintiff's Complaint is granted and its Motion to Dismiss Camden County and Taylor's Cross-claim is granted.

I.   **JURISDICTION**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as state law.[2]  This Court has jurisdiction over

---

[1]     Plaintiff also named "Jane Doe" in his complaint, referring to a phlebotomist at Our Lady of Lourdes Hospital who allegedly disregarded a doctor's orders and improperly drew blood from plaintiff's injured right arm.

[2]     Plaintiff has not specified under which body of state law he brings his "STATE CLAIMS."

plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

## II.  <u>BACKGROUND</u>

The following facts were presented in plaintiff's complaint.[3] In 1997, plaintiff, who at the time was incarcerated in a Pennsylvania state prison, underwent angioplasty at Holy Spirit in Camp Hill, Pennsylvania.  As part of the procedure, a shunt was implanted in plaintiff's subclavian vein.  Plaintiff was prescribed pain medication and blood thinners for six months to prevent blood clots.

In February 1998, plaintiff was released from prison.  During the next year, however, he violated his parole and returned to custody.  While serving the remainder of his sentence, plaintiff began to experience pain and swelling in his right arm near the site where his surgery had been performed.  Despite his pain, prison officials refused to provide plaintiff any medical treatment or services.  Plaintiff was released from prison in 2001.

Several years later, in 2007, plaintiff was convicted of an offense in New Jersey and, eventually, was placed in an intensive supervision program.  In or around October 2008, plaintiff violated

---

[3]      Because one of the matters before the Court is Holy Spirit's Motion to Dismiss Plaintiff's Complaint, the operative facts are culled from plaintiff's complaint, accepted as true, and presented in a light most favorable to the nonmoving party. <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005).

his program and was remanded to the custody of the Camden County
Correctional Facility ("CCCF").  At this time, plaintiff again
experienced pain and swelling throughout his right arm, as well as
chest pains and the debilitation of his right hand.  Plaintiff
requested medical attention from the CCCF's healthcare providers.

On or about October 12, 2008, a nurse refused to examine
plaintiff's arm, informing him that he would have to wait until a
doctor could see him.  Several days later, plaintiff complained
again to the nurse about the pain and swelling, which disrupted his
sleep.  Thereafter, Dr. Pomerentze examined plaintiff's arm and
sent him to Our Lady of Lourdes Hospital ("Lourdes").

At Lourdes, Dr. Amed informed plaintiff that his shunt had
collapsed, causing blood clots in his subclavian vein.  Plaintiff
avers that "[t]his is when [he] learnt that the shunt had been
implanted incorrectly."  Having failed to eliminate the clots using
a catheter through the arm and groin, Dr. Amed told plaintiff that
only by removing one of his ribs could plaintiff be successfully
treated.  Nevertheless, doctors refused to perform the operation,
or even review plaintiff's medical records, because Camden County
and CCCF officials, including Warden Taylor, would not assume the
cost of plaintiff's medical care and further deterred any
treatment.  Dr. Amed reported to plaintiff that, despite the
doctor's preference to keep him in the hospital, plaintiff had to
return to the CCCF because Camden County officials demanded that he
be discharged and refused to pay for his medical care.  On or

4

around October 31, 2008, plaintiff was discharged from Lourdes and returned to the CCCF.

Plaintiff complained to Taylor, Camden County officials, and Lourdes personnel about the County's deliberate indifference towards his serious medical condition and its refusal to pay for his necessary services.  He received no response.

Moreover, CCCF officials and Dr. Pomerentze failed to order and maintain adequate amounts of prescribed medication for plaintiff and did not monitor his condition.  Taylor, meanwhile, refused to address the problems plaintiff experienced with his treatment.  Although he iterated that plaintiff's condition was life-threatening, Dr. Pomerentze stated that plaintiff would not receive the requisite medical care he promptly needed until he was released from custody.

Also during plaintiff's term in the CCCF, around October and November 2008, Nurse Wilcox treated plaintiff by injecting him intravenously with medication intended to prevent blood clots.  On a number of occasions, Nurse Wilcox injected plaintiff improperly, causing him extreme pain.  She told plaintiff that she did not care about his injury or medical condition.  In response to the nurse's mistreatment, plaintiff filed a grievance.  However, Taylor, Dr. Pomerentze, and Camden County officials did not address plaintiff's complaints.  Rather, Dr. Pomerentze ceased the administration of medication to plaintiff.

On or around December 5, 2008, while examining plaintiff, Dr.

Pomerentze informed him that new blood clots had developed in his lower right forearm.  Without re-administering plaintiff's medication and in spite of his inability to fully use his right arm and hand, Dr. Pomerentze released plaintiff from the CCCF's infirmary back to the general population.  Ultimately, plaintiff returned to the medical unit.  Plaintiff's right arm remained cradled in a shoulder sling.

On December 12, 2008, plaintiff, as a pro se litigant, submitted a complaint to this Court naming several defendants, including Camden County, Taylor, the CCCF, Dr. Amed, Dr. Pomerentze, Lourdes, Holy Spirit, and Nurse Wilcox.  The complaint alleges violations of plaintiff's Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, as well as state claims for medical malpractice and negligence.  Plaintiff avers that defendants acted with deliberate indifference towards his serious medical condition and needs by refusing to provide him with and otherwise delaying and disrupting his requisite medical care.  More specifically, and particularly relevant here, plaintiff alleges that Holy Spirit "was deliberately indifferent" towards his medical condition when it "incorrectly implanted the shunt in plaintiff's subclavian vein."  Plaintiff also submits that Holy Spirit, in violation of state law, "was deliberately indifferent to plaintiff's serious medical needs" when it failed "to use that degree of care normally used by others under like circumstances."  Defendant seeks $1,000,000 in compensatory and punitive damages.

Soon after plaintiff filed his complaint, he was released from the CCCF and now resides in Pennsylvania.  This Court granted plaintiff in forma pauperis status.[4]  In response to plaintiff's suit, Camden County and Taylor filed an Answer, which set forth a cross-claim seeking contribution and or indemnification from the other defendants named in the action, including Holy Spirit.

Presently before the Court are two motions filed by Holy Spirit -- the Motion to Dismiss Plaintiff's Complaint and the Motion to Dismiss Camden County and Taylor's Cross-claim.[5]

III. **DISCUSSION**

Plaintiff's pro se complaint alleges a violation of Section 1983 and medical malpractice or negligence against Holy Spirit. Defendants/cross-claimants Camden County and Taylor seek contribution and or indemnification from Holy Spirit.

**A.    Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347,

---

[4]    Plaintiff's applications for the appointment of counsel were denied twice.

[5]    No response to Holy Spirit's motions to dismiss has been filed with this Court by plaintiff, Camden County, or Taylor.

7

350 (3d Cir. 2005).  It is well settled that a pleading is
sufficient if it contains "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  Under the liberal federal pleading rules, it is not
necessary to plead evidence, and it is not necessary to plead all
the facts that serve as a basis for the claim.  Bogosian v. Gulf
Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough
the Federal Rules of Civil Procedure do not require a claimant to
set forth an intricately detailed description of the asserted basis
for relief, they do require that the pleadings give the defendant
fair notice of what the plaintiff's claim is and the grounds upon
which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S.
147, 149 n.3 (1984) (citation and internal quotation marks
omitted).

A district court, in weighing a motion to dismiss, asks "'not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim.'"
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions' . . . ."
(citation omitted)).  Under the Twombly/Iqbal standard, the Third
Circuit has instructed a two-part analysis.  First, a claim's
factual and legal elements should be separated; a "district court
must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions." <u>Fowler v. UPMC Shadyside</u>,
578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at
1950).

Second, a district court "must then determine whether the
facts alleged in the complaint are sufficient to show that the
plaintiff has a 'plausible claim for relief.'" <u>Id.</u> at 211 (quoting
<u>Iqbal</u>, 129 S. Ct. at 1950). "[A] complaint must do more than
allege the plaintiff's entitlement to relief." <u>Id.</u>; <u>see</u> <u>Phillips</u>
<u>v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("The
Supreme Court's <u>Twombly</u> formulation of the pleading standard can be
summed up thus: 'stating . . . a claim requires a complaint with
enough factual matter (taken as true) to suggest' the required
element.  This 'does not impose a probability requirement at the
pleading stage,' but instead 'simply calls for enough facts to
raise a reasonable expectation that discovery will reveal evidence
of' the necessary element." (quoting <u>Twombly</u>, 550 U.S. at 556)).
The defendant bears the burden of showing that no claim has been
presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005).

**B.   Section 1983 Claim**

**1.   Statute of Limitations**

Plaintiff alleges that Holy Spirit violated Section 1983 by
showing deliberate indifference towards his medical condition and
needs in violation of the Eighth Amendment.  In response, Holy
Spirit argues that the Section 1983 claim is barred from
consideration because the statute of limitations period has

expired.

The accrual date of a Section 1983 civil rights action is entirely a question of federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007); Fullman v. Pa. Dep't of Corr., 265 Fed. Appx. 44, 46 (3d Cir. 2008). "The limitations period for purposes of § 1983 claims begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Fullman, 265 Fed. Appx. at 46 (citation and internal quotation marks omitted). Although federal law governs the accrual date, the applicable limitations period for a Section 1983 claim is the statute of limitations for personal injuries in the state in which the cause of action arose. Wallace, 549 U.S. at 387; see Marcum v. Harris, 328 Fed. Appx. 792, 795 (3d Cir. 2009) ("Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action arose." (citing Wallace, 549 U.S. at 387)). Plaintiff's cause of action against Holy Spirit arose in the State of Pennsylvania where, at the relevant time, plaintiff was an inmate at a Pennsylvania correctional facility and was a patient at Holy Spirit in Camp Hill, Pennsylvania -- where he was allegedly injured. In Pennsylvania, the statute of limitations for personal injury claims, and thus for Section 1983 claims, is two years. See 42 Pa. Cons. Stat. § 5524; Lyons v. Emerick, 187 Fed. Appx. 219, 221 (3d Cir. 2006).

Moreover, in Section 1983 actions, state law provides not only

10

the statute of limitations but also tolling rules, so long as those rules do not conflict with federal law or policy.[6]  <u>Wallace</u>, 549 U.S. at 394; <u>Lake v. Arnold</u>, 232 F.3d 360, 368-69 (3d Cir. 2000). Under Pennsylvania law, the "discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, '<u>despite the exercise of due diligence</u>, to know of the injury or its cause.'"[7] <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 510 (3d Cir. 2006) (quoting <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 503 Pa. 80, 85 (1983)).  "Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'"  <u>Id.</u> (quoting <u>Debiec v. Cabot Corp.</u>, 352 F.3d 117, 129 (3d Cir. 2003)).

To invoke the discovery rule, it is imperative that a

---

[6]    In rare circumstances, the federal doctrine of equitable tolling may also toll the statute of limitations in a Section 1983 action.  <u>Lake v. Arnold</u>, 232 F.3d 360, 370 (3d Cir. 2000).  No one argues, nor does the Court find, that the federal doctrine of equitable tolling applies in this case.  Nor do we find that applying Pennsylvania's tolling rules in this case violates federal law or policy.

[7]    Courts within the Third Circuit have considered Pennsylvania's discovery rule as a basis to toll the statute of limitations in Section 1983 cases.  <u>See, e.g.</u>, <u>Koehnke v. City of McKeesport</u>, 2009 U.S. App. LEXIS 23841, at **7-9 (3d Cir. Oct. 28, 2009); <u>Gillespie v. Hogan</u>, 182 Fed. Appx. 103, 105 (3d Cir. 2006); <u>Getchey v. County of Northumberland</u>, 120 Fed. Appx. 895, 897-99 (3d Cir. 2005); <u>Carter v. Pa. Dep't of Corr.</u>, 2008 U.S. Dist. LEXIS 102016, at *27 n.7 (E.D. Pa. Dec. 17, 2008); <u>Heilman v. T.W. Ponessa & Assocs.</u>, 2008 U.S. Dist. LEXIS 6875, at **16-18 (M.D. Pa. Jan. 30, 2008).

plaintiff exercise reasonable diligence in investigating or
otherwise attempting to ascertain whether he suffers from an injury
and whether that injury is the result of another's fault.

> As we have explained, the discovery rule
> focuses not on the plaintiff's actual knowledge,
> but rather on whether the knowledge was known,
> or through the exercise of diligence, knowable
> to the plaintiff.  A plaintiff therefore is
> obligated to exercise reasonable diligence in
> ascertaining the existence of the injury and its
> cause.  As soon as the plaintiff either has
> discovered or, exercising reasonable diligence,
> should have discovered the injury and its cause,
> the statute of limitations begins to run.
> Moreover, the plaintiff attempting to apply the
> discovery rule bears the burden of demonstrating
> that he exercised reasonable diligence in
> determining the existence and cause of his
> injury.  To demonstrate reasonable diligence, a
> plaintiff must establish[] that he pursued the
> cause of his injury with those qualities of
> attention, knowledge, intelligence and judgment
> which society requires of its members for the
> protection of their own interests and the
> interests of others.

Id. at 511 (citations and quotation marks omitted); see Debiec, 352
F.3d at 129 ("'Reasonable diligence is just that, a reasonable
effort to discover the cause of an injury under the facts and
circumstances present in the case.  Long ago we recognized that
there are few facts which diligence cannot discover, but there must
be some reason to awaken inquiry and direct diligence in the
channel in which it would be successful.  This is what is meant by
reasonable diligence.'" (quoting Cochran v. GAF Corp., 542 Pa. 210,
217 (1995))); Barnes v. Am. Tobacco Co., 984 F. Supp. 842, 857
(E.D. Pa. 1997) (noting that "when information is available, the

12

failure of a plaintiff to make proper inquiries is a failure to exercise reasonable diligence as a matter of law" (citation and internal quotation marks omitted)); Cochran, 542 Pa. at 217-18 ("[A] diligent investigation may require one to seek further medical examination as well as competent legal representation."). Although whether a plaintiff has exercised reasonable diligence may at times be a question reserved for the jury, the commencement period may be decided as a matter of law "'where the facts are so clear that reasonable minds cannot differ.'"  Debiec, 352 F.3d at 129 (quoting Cochran, 542 Pa. at 215).[8]

Here, plaintiff allegedly suffered his injury in 1997 while a patient at Holy Spirit.  In 1999, as an inmate in a Pennsylvania correctional facility, he experienced pain and swelling in his arm near the site where the operation had been performed.  Plaintiff alleges that prison officials refused him any medical attention during the entire period of his incarceration, which ended upon his release in 2001.

When plaintiff experienced pain and swelling in his arm in 1999, he knew of his injury.  At that time, given the location of

---

[8]     Based on the pleadings, this is not a case in which plaintiff sought treatment and was incorrectly informed that his pain was a normal symptom of his previous medical procedure. Plaintiff has not suggested that he reasonably relied on improper assurances by a healthcare provider in failing to further investigate his injury sooner or to realize the nature and cause of his injury.  Cf. Fine v. Checcio, 582 Pa. 253 (2005) (finding that discovery rule may apply where plaintiff may have been misled by doctor about cause and duration of post-surgical complications).

his affliction and knowledge of the treatment provided to him just two years earlier by Holy Spirit, plaintiff reasonably should have suspected that his injury may have resulted from inadequate medical care he previously received.  Even if plaintiff's understanding of his condition and its source was obfuscated, just as his reasonable efforts to secure treatment were frustrated, by prison officials who refused to treat him, there are no facts alleged which would explain why plaintiff did not seek medical care when he was released from custody in 2001.

"The burden is on the party claiming the benefit of the discovery rule to prove that she falls within it."  Debiec, 352 F.3d at 129; see Dalrymple v. Brown, 549 Pa. 217, 224 (1997) ("The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence.").  Here, plaintiff did not respond to Holy Spirit's motion to dismiss and, thus, provided no justifications for extending the statute of limitations.  In his complaint, plaintiff merely noted that he first learned that the shunt had been improperly implanted in October 2008.  However, plaintiff, who knew of his injury in 1999 and was denied treatment while in prison, reasonably should have sought medical care after he was released from prison in 2001 and several years prior to his incarceration in the CCCF in 2008.  See Cochran, 542 Pa. at 217-19 (holding that reasonable minds could not differ on decedent's lack of reasonable diligence because, during four years since his

14

injury, decedent "failed to seek additional legal and medical help
to ascertain the actual cause of his injury"). Nowhere does
plaintiff suggest that he sought a medical examination or any
treatment during this interval. Through reasonable diligence,
plaintiff may have learned shortly after his release from prison in
2001 whether the pain and swelling in his right arm were
attributable to Holy Spirit's misconduct. That his injury may have
worsened over the years does not excuse plaintiff from failing to
exercise reasonable diligence, upon his release from prison, to
learn of the cause of his injury. Cf. Charowsky v. Kurtz, 2000
U.S. Dist. LEXIS 10641, at *10 (E.D. Pa. July 31, 2000) ("The
discovery rule does not . . . delay the running of the statute of
limitations if a plaintiff knows she was injured but does not know
the full extent of the injury.").

Accordingly, the Court finds that plaintiff knew of his injury
in 1999 and reasonably should have known of another party's
possible culpability around 2001. Plaintiff did not submit his
complaint until December 2008, more than six years after the
accrual date of the Section 1983 claim. Based on the facts
presented, reasonable minds cannot differ that plaintiff failed to
exercise reasonable diligence in investigating the cause of his
injury.[9] Therefore, plaintiff's Section 1983 claim is time-barred

_____

[9]     Even if plaintiff were unable to learn of the precise
cause of his injury in 2001, plaintiff fails to allege facts
showing that, upon leaving prison that year, he reasonably
exercised due diligence in an attempt to learn of the nature and

15

as a matter of law.[10]

###           2.    Deliberate Indifference by a State Actor

Although plaintiff's Section 1983 claim is time-barred, the Court, nonetheless, will address the substance of plaintiff's claim in relation to Holy Spirit's other arguments seeking dismissal.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

---

cause of the pain and swelling in his right arm.  Cf. Dalrymple, 549 Pa. at 224 ("The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence.").  Again, because plaintiff bears the burden of proving the application of the discovery rule in this case, this Court must deem plaintiff's claim time-barred as a matter of law.

[10]    The statute of limitations for personal injury actions in New Jersey, as in Pennsylvania, is two years.  See N.J.S.A. 2A:14-2; Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  Likewise, New Jersey law also employs the discovery rule, tolling the limitations period "until the injured party actually discovers or should have discovered through reasonable diligence the fact essential to the cause of action," specifically injury and fault.  R.A.C. v. P.J.S., Jr., 192 N.J. 81, 98 (2007); see Grunwald v. Bronkesh, 131 N.J. 483, 494-95 (1993).  Therefore, assuming arguendo that the statute of limitations and tolling rules furnished by the State of New Jersey, this Court's forum state, were to apply here instead of Pennsylvania's, the result would be the same, and plaintiff's Section 1983 claim would be time-barred.  Moreover, the application of New Jersey law would also include its choice of law rules which would appear to dictate the application of Pennsylvania's statute of limitations and accompanying law in any event.  See Heavner v. Uniroyal, Inc., 63 N.J. 130, 141 (1973) (noting that "when the cause of action arises in another state, the parties are all present in and amendable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period had expired at the time suit is commenced here, New Jersey will hold the suit barred").

> any citizen of the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws,
> shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must show that: (1) the conduct challenged was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

Plaintiff proffers no specific allegations that Holy Spirit or any member of its medical staff is a state actor acting under the color of state law.  See Brown v. Terrell, 322 Fed. Appx. 93, 94 (3d Cir. 2009) (noting that a Section 1983 claim requires a plaintiff to "'show that the alleged deprivation was committed by a person acting under color of state law'" (quoting West v. Atkins, 487 U.S. 42, 48 (1988))).  This alone would bar plaintiff's action under Section 1983.

Further consideration of plaintiff's complaint reveals an additional deficiency concerning his Section 1983 claim.  The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To state a claim for violation of this Eighth Amendment right, a prisoner must demonstrate that: (1) his medical needs are

17

serious; and (2) the defendants showed deliberate indifference to those needs.  Id. at 104-05; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  There is no dispute that plaintiff's medical needs are serious.  Holy Spirit argues, however, that plaintiff has failed to allege facts which suggest it was deliberately indifferent to plaintiff's serious medical needs and that plaintiff's allegations, at worst, accuse Holy Spirit of negligently implanting a shunt in his subclavian vein.

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 835-38 (1994); Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Rouse, 182 F.3d at 197 (noting that deliberate indifference requires "recklessness or a conscious disregard of a serious risk").  "[M]ere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most the physician may have committed medical malpractice but not an Eighth Amendment violation.  See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

In this case, plaintiff fails to allege that Holy Spirit acted with deliberate indifference towards his serious medical condition and needs. In his complaint's factual recitation, plaintiff avers that, in 1997, he underwent angioplasty at Holy Spirit and that a "shunt was improperly implanted in his subclavian vein." "After the operation," he adds, "plaintiff was prescribed blood thinners for 6 months, to prevent blood clots," along with pain medication. Based solely on those purported facts, plaintiff alleges as his cause of action that Holy Spirit was deliberately indifferent to plaintiff's medical condition and needs because it "incorrectly implanted the shunt in plaintiff's subclavian vein."

Entirely absent from plaintiff's complaint are any facts intimating that Holy Spirit acted recklessly or with conscious disregard of a serious risk. The allegations illustrate that Holy Spirit provided medical services, in the form of angioplasty and the implantation of a shunt, to plaintiff; however, they do not suggest any actions or conduct undertaken by Holy Spirit with

19

deliberate indifference towards plaintiff's health or treatment.
At most, plaintiff, describing the implantation of the shunt as
"improper" and "incorrect," presents a claim of medical malpractice
or professional negligence against Holy Spirit, which does not
constitute cruel and unusual punishment as proscribed by the Eighth
Amendment.  See Bramson v. Sulayman, 2007 U.S. Dist. LEXIS 4991, at
**14-15 (D.N.J. Jan. 23, 2007) (granting summary judgment against
plaintiff's Eighth Amendment claim because, in part, his
"allegations constitute malpractice or negligence" and "nothing in
Plaintiff's claims against these Defendants rises to the level of
reckless disregard of a known risk of harm, which is required for a
deliberate indifference claim").  Plaintiff cannot aggrandize his
allegations into an Eighth Amendment violation simply by garnishing
them with the stigmatizing language of "deliberate indifference."
See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-
30 (3d Cir. 1997) (explaining that a court need not credit "bald
assertions" or "legal conclusions" in a complaint when deciding a
motion to dismiss).

       Notwithstanding the complaint's deficiencies, Third Circuit
precedent "supports the notion that in civil rights cases district
courts must offer amendment -- irrespective of whether it is
requested -- when dismissing a case for failure to state a claim
unless doing so would be inequitable or futile."  Fletcher-Harlee
Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d
Cir. 2007).  Because the statute of limitations for plaintiff's

Section 1983 claim has expired and it is not plausible that plaintiff can assert facts to demonstrate deliberate indifference, leave to amend would be futile in this case.  Therefore, Holy Spirit's motion to dismiss plaintiff's Section 1983 claim is granted.[11]

### C.   State Claim

In a subsection of his complaint captioned "STATE CLAIMS," plaintiff seemingly sets forth a medical malpractice or professional negligence claim against Holy Spirit.  In particular, plaintiff states that Holy Spirit "was deliberately indifferent to plaintiff's serious medical needs, when [Holy Spirit] failed to use that degree of care normally used by others under like circumstances."  Holy Spirit, assuming the application of New Jersey law, argues that plaintiff's claim must be dismissed because he failed to provide Holy Spirit with an affidavit of merit, as is statutorily required by N.J.S.A. 2A:53A-27.

Pursuant to 28 U.S.C. § 1367(a), a federal district court, in a civil action, may exercise supplemental jurisdiction over any state claims that are so related to the federal claims over which the court has original jurisdiction as to constitute part of the

---

[11]   Holy Spirit also contends that plaintiff's request for punitive damages should be dismissed because he has not pled any facts to demonstrate that Holy Spirit acted with evil motive or intent or with reckless or callous indifference towards plaintiff's rights.  Because plaintiff's Section 1983 claim has been dismissed, the issue of an award of punitive damages under Section 1983 is moot.

same case or controversy under the United States Constitution.  28

U.S.C. § 1367(a).  Supplemental jurisdiction, however, falls within

the district court's discretion, and is not an entitlement

guaranteed to the plaintiff.  See City of Chicago v. Int'l Coll. of

Surgeons, 522 U.S. 156, 172 (1997).  A district court may decline

to exercise supplemental jurisdiction over a state claim for

several reasons, including that "the district court has dismissed

all claims over which it has original jurisdiction," 28 U.S.C. §

1367(c)(3), or "in exceptional circumstances, there are other

compelling reasons for declining jurisdiction," 28 U.S.C. §

1367(c)(4).  When adjudicating whether "other compelling reasons"

counsel against supplemental jurisdiction, a court must evaluate

"'economy, convenience, fairness, and comity.'"  Bangura v. City of

Philadelphia, 2007 U.S. Dist. LEXIS 76270, at *15 (E.D. Pa. Oct.

12, 2007) (quoting Lindsay v. Gov't Emples. Ins. Co., 448 F.3d 416,

425 (D.C. Cir. 2006)); see City of Chicago, 522 U.S. at 173 (noting

that "when deciding whether to exercise supplemental jurisdiction,

a federal court should consider and weigh in each case, and at

every stage of litigation, the values of judicial economy,

convenience, fairness, and comity" (citation and internal quotation

marks omitted)).

Having balanced the interests at stake in this case, the Court

declines to exercise supplemental jurisdiction over plaintiff's

state claim against Holy Spirit.  Because plaintiff's Section 1983

claim has been dismissed, the only remaining claim against Holy

Spirit is plaintiff's state claim premised on medical malpractice and or negligence.  The relationship between plaintiff's state claim against Holy Spirit and his federal and state claims against the other defendants –- like the relationship between Holy Spirit and the other defendants generally -- is tenuous.  Holy Spirit's alleged misconduct occurred in Pennsylvania in 1997 when plaintiff was an inmate at a Pennsylvania correctional facility, and plaintiff first learned of his injury resulting from Holy Spirit's alleged misconduct in 2001 while, presumably, he was still an inmate at a Pennsylvania correctional facility.  All other claims in this case are asserted by plaintiff against defendants who are located or work in New Jersey and who allegedly injured plaintiff in New Jersey in 2008 while he was an inmate at a New Jersey correctional facility.  State borders and more than a decade in time separate Holy Spirit and its co-defendants in this case. Although the alleged actions of the other defendants may have aggravated the injury that Holy Spirit purportedly caused to plaintiff, the other defendants' actions were committed entirely independent of those allegedly committed by Holy Spirit.

Geographically, temporally, and substantively, plaintiff's malpractice claim against Holy Spirit is distinguishable from its remaining claims against the New Jersey defendants who allegedly withheld and disrupted treatment for plaintiff's injury. Therefore, it would be unfair and difficult for Holy Spirit to litigate in a federal civil rights case in New Jersey, a state with

23

which it has no readily apparent connection or contacts, when no viable federal claims remain against it.  Cf. Bangura, 2007 U.S. Dist. LEXIS 76270, at **16-17 (refusing to exercise supplemental jurisdiction over the defendant because, in part, "it is simply unfair to require [the defendant] to continue to participate in this sprawling civil rights case when there are no federal claims left against her and no allegations of fact to support the few remaining state law claims").  Further, judicial economy and convenience would not be served by exercising supplemental jurisdiction over a defendant and a cause of action so distinguishable from other defendants and causes of action implicated by plaintiff's suit.

Moreover, because plaintiff's cause of action against Holy Spirit arose entirely in Pennsylvania, it appears -- although this Court need not specifically address or resolve the issue -- that Pennsylvania law, and not New Jersey law, may apply to that claim.  If that were the case, plaintiff's sole cause of action against Holy Spirit likely would implicate a different body of state law than that which would apply to all other defendants here.  Further confusing the issue of choice of law is that plaintiff failed to specify the particular statutory or common law grounds upon which his state claim is based.[12]

---

[12]    Holy Spirit assumes that New Jersey law applies and, for example, cites the New Jersey Affidavit of Merit statute, N.J.S.A. 2A:53A-27.  However, Holy Spirit notably refers to the affidavit of merit as the "certificate of merit," which is

Rather than adjudicate plaintiff's vague state claim, the better course of action, which would promote the interests of the parties and this Court and the principles of comity, is to refrain from exercising supplemental jurisdiction over plaintiff's state claim against Holy Spirit and to dismiss it, without prejudice, thereby affording plaintiff an opportunity to re-file the claim in the appropriate state court.[13]

**D.   Motion to Dismiss Cross-claim**

In addition to its Motion to Dismiss Plaintiff's Complaint, Holy Spirit also filed a Motion to Dismiss Camden County and Taylor's Cross-claim for contribution and or indemnification.

In their "CROSSCLAIM FOR CONTRIBUTION AND/OR INDEMNIFICATION," Camden County and Taylor (or "cross-claimants") set forth:

> Accordingly, without admitting any liability whatsoever [cross-claimants] hereby demand from any/all co-defendants currently named or to be named to this action for contribution and/or indemnification pursuant to any/all applicable provisions of common law and/or contract and/or statute, including but not limited to the New Jersey Joint Tortfeasor Contribution Act,

Pennsylvania's analogue to New Jersey's affidavit.

[13]    The Court notes, without holding, that plaintiff's state claim is subject to a possible defense under the statute of limitations, may be subject to the statutory requirement of an affidavit or certificate of merit, and may in light of this ruling be barred by principles of claim or issue preclusion. Although not addressing or resolving them here, the Court recognizes those issues, which turn on an application of Pennsylvania law, as further reasons why it should not exercise supplemental jurisdiction over plaintiff's state claims against Holy Spirit and, instead, should defer them to the considered judgment of a state court.

> N.J.S.A. 2:53A-1 et seq.; Comparative Negligence
> Act, N.J.S.A. 2A:15-5.1 et seq.; the New Jersey
> Tort Claims Act, N.J.S.A. 59:9-3 and 59:9-4
> and/or by way of demand for complete
> indemnification against all other defendants
> currently named or to be named, assert that any
> negligence on the part of [cross-claimants] is
> only secondary, vicarious and imputed whereas
> the negligence of any/all such other defendants
> was primary, direct and active.

Camden County and Taylor do not assert in their cross-claim any substantial facts or arguments beyond those captured above.

### 1.   Joint Tortfeasors

Holy Spirit argues that Camden County and Taylor's contribution claim should be dismissed because the cross-claimants have not demonstrated that Holy Spirit is a "joint tortfeasor" as contemplated by New Jersey's Joint Tortfeasors Contribution Law ("JTCL"), N.J.S.A. 2A:53A-1 et seq.

Pursuant to the JTCL, "joint tortfeasors" are "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. For joint tortfeasor contribution, the crucial test is "joint liability and not joint, common or concurrent negligence." Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 72 (2004). Thus, joint liability "is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." Id. (citation and internal quotation marks omitted). In addition, for purposes of the JTCL, two tortfeasors

26

must cause the "same injury," or harm, to the victim, a necessary element distinct from any cumulative damage the victim may suffer as a result of multiple injuries caused by different tortfeasors. Id. at 75. "Where the pleadings show separate torts, severable as to time and breaching different duties, rather than a joint tort, dismissal of the third-party action is appropriate." Finderne Mgmt. Co. v. Barrett, 355 N.J. Super. 197, 208 (App. Div. 2002).

In this case, cross-claimants merely declare that other defendants, including Holy Spirit, were primarily, directly, and actively negligent, whereas cross-claimants are, at worst, only secondarily or vicariously liable for plaintiff's injuries. Camden County and Taylor do not assert any specific factual allegations in an effort to satisfy N.J.S.A. 2:53A-1's requirement of "joint tortfeasors." See Ford Motor Co. v. Edgewood Props., 2008 U.S. Dist. LEXIS 84776, at **59-60 (D.N.J. Oct. 16, 2008) (dismissing cross-claim seeking contribution because claimant did not identify defendant as joint tortfeasor or allege facts entitling him to recovery). However, even adopting plaintiff's allegations in support of the cross-claim, the request for contribution under New Jersey law still fails.

The pleadings demonstrate that Holy Spirit's allegedly negligent implantation of a shunt in plaintiff's subclavian vein occurred in 1997, more than a decade before plaintiff was incarcerated in the CCCF in Camden. Moreover, Holy Spirit's alleged mistreatment of plaintiff sounds in medical malpractice.

Plaintiff's claims against cross-claimants, on the other hand, do not implicate medical malpractice but, rather, allege both failure to provide access to necessary medical care and, at other times, affirmative interference with plaintiff's access to such care -- alleged misconduct which occurred in 2008, approximately eleven years after plaintiff's angioplasty had been performed at Holy Spirit.

Finally, whatever the duties that a municipality and a prison warden may owe to an inmate, those duties are not the same as those owed by a hospital and its medical staff to a patient. Therefore, Holy Spirit's motion to dismiss Camden County and Taylor's contribution claim is granted.

### 2.   Indemnification

Holy Spirit argues that Camden County and Taylor's indemnification claim should be dismissed because no express indemnification agreement exists between the parties.

Under New Jersey law, indemnification is available when a party free of fault is held liable for another party's torts due to constructive, secondary, or vicarious liability. Ferriola v. Stanley Fastening Sys., L.P., 2007 U.S. Dist. LEXIS 56635, at *6 (D.N.J. Aug. 1, 2007) (citing Allied Corp. v. Frola, 730 F. Supp. 626, 639 (D.N.J. 1990)). "Two different situations can give rise to indemnification: either when a contract expressly provides for it, or when a special legal relationship creates an implied right

of indemnity." <u>Id.</u> at *7 (citing <u>Allied Corp.</u>, 730 F. Supp. at 639; <u>Nivins v. Seivers Hauling Corp.</u>, 424 F. Supp. 82, 87-88 (D.N.J. 1976)).

Here, cross-claimants do not allege that they had contracted, in any way, with Holy Spirit or that they had shared a special legal relationship with Holy Spirit on par with such legally cognizable relationships as lessor-lessee, principal-agent, or bailor-bailee. <u>See id.</u> (citing <u>Ramos v. Browning Ferris Indus. of S. Jersey</u>, 103 N.J. 177, 189 (1986)); <u>see also</u> <u>Ford Motor Co.</u>, 2008 U.S. Dist. LEXIS 84776, at *60 (dismissing cross-claim seeking indemnification because claimant "fail[ed] to plead the existence of a special legal relationship" that would "give rise to a duty to indemnify"). Therefore, Holy Spirit's motion to dismiss Camden County and Taylor's indemnification claim is granted.[14]

_____

[14]     Apart from its express invocation of New Jersey law, Camden County and Taylor also pursue "contribution and/or indemnification pursuant to any/all applicable provisions of common law and/or contract and/or statute." This blanket legal assertion, absent any factual support, fails to provide adequate notice to any adversarial parties regarding the cause of action against which they must defend. <u>See</u> Fed. R. Civ. P. 8(a)(2) (requiring that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Twombly</u>, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). Because Camden County and Taylor fail to allege their causes of action, and the facts in support thereof, with requisite specificity, their cross-claims against Holy Spirit are dismissed entirely.
    Moreover, Holy Spirit advances additional arguments in general support of dismissing the cross-claim. Because the

IV.   **CONCLUSION**

For the foregoing reasons, Holy Spirit's Motion to Dismiss Plaintiff's Complaint, with regards to the Section 1983 claim, is granted, with prejudice, and the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state claim against Holy Spirit, which is hereby dismissed without prejudice. Further, Holy Spirit's Motion to Dismiss Camden County and Taylor's Cross-claim is granted, with prejudice.  An Order consistent with this Opinion will be entered.


Dated: December 3, 2009        /s/ NOEL L. HILLMAN
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

---

cross-claim has been dismissed, this Court need not address those arguments.